M. J. Haden
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DUSTIN L. ARMSTRONG,<br><br>　　　　　Defendant. | Case No. 4:06-cr-0018-TWH<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALLEGATIONS TWO, THREE, FIVE, SIX AND EIGHT OF PETITION TO REVOKE PROBATION** |

I.   INTRODUCTION

　　　　On March 8, 2005, in the Middle District of Georgia, Columbus Division, Mr. Armstrong was charged in a single count information with violation of 21 U.S.C. § 844, simple possession of marijuana. On March 18, 2005, he appeared before United States Magistrate Judge G. Mallon Faircloth for arraignment on the charge. At that time, Mr. Armstrong consented to his case proceeding before a magistrate judge and entered a plea of guilty. He was not represented by counsel. Attachment A, Docket Sheet.

　　　　On June 24, 2005, Mr. Armstrong was sentenced to a term of one year probation with the 13 standard conditions. Attachment B, Judgement. Pursuant to

18 U.S.C. § 3583(d), the court ordered that "[t]he defendant shall not illegally possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from placement on probation and at least two periodic drug tests thereafter."  Attachment B, p. 2.  The court also imposed the special condition that Mr. Armstrong "participate in a program approved by the U.S. Probation Office for substance abuse testing and, if necessary, treatment for drug/alcohol addiction and/or dependency."  Attachment B, p. 3.

Following his sentencing, Mr. Armstrong relocated to Colorado to reside with family.  During that time, the U.S. Probation Office for the District of Colorado, Denver Division, preformed courtesy supervision for the Middle District of Georgia.

In December 2005, Mr. Armstrong's father was transferred to Fort Wainwright in Fairbanks, Alaska.  At some point prior to December 27, 2005, Mr. Armstrong's supervision was officially transferred to the District of Alaska.  When Mr. Armstrong arrived in Fairbanks, Alaska, he was placed on random urinalysis monitoring.

As alleged in the petition to revoke at Docket #3, on December 27, 2005, as part of the random urinalysis monitoring program, Mr. Armstrong was directed to report to the U.S. Probation Office and submit a urine sample.  Allegation Two charges that he failed to report.  Allegation Three charges that as a direct result of his failure to report for urinalysis, he provided an untruthful explanation to the probation officer.  Allegation Five alleges that on February 2, 2006, as part of the random urinalysis monitoring program, Mr. Armstrong tested positive for the presence of opiates.  Allegation Six charges that as a direct result of the alleged positive test result he provided an untrue statement to his

probation officer. Allegation Eight alleges that on March 2, 2006, as part of the random urinalysis monitoring program, Mr. Armstrong tested positive for the presence of marijuana.

On March 30, 2006, Mr. Armstrong appeared before the Honorable Terrance Hall to answer to the petition. Mr. Armstrong entered a denial to each allegation in the petition. The court ordered that Mr. Armstrong be temporarily detained. On March 31, 2006, a preliminary hearing was held. The court found probable cause on Allegations One, Two, Three, Five, Six and Eight of the petition. Mr. Armstrong remains in custody at the Fairbanks Correctional Center.

Mr. Armstrong now files a motion to dismiss Allegations Two, Three, Five, Six and Eight of the petition to revoke on the ground that under the holding of United States v. Stephens, 424 F.3d 876 (9th Cir. 2005), the probation office was not authorized to place him on the random urinalysis monitoring program and in doing so violated his Fourth Amendment right to be free from unreasonable searches and seizures, his Fifth Amendment right to Due Process and his Fifth Amendment protection against double jeopardy. Thus, the allegations must be dismissed.

II.   ARGUMENT

In United States v. Stephens, the court examined whether the district court improperly delegated its judicial authority to the probation officer to determine the frequency, timing and manner of substance abuse treatment and testing to which a defendant would be subject during supervised release. The court held that as part of a court ordered treatment program, a defendant may be required to undergo regular drug testing, in addition to the mandatory three tests as order under 18 U.S.C. § 3583(d). However, the random urinalysis that was not part of a bonafide treatment program was an

improper delegation of the district court's duty to set the maximum number of <u>non-treatment</u> drug test to which a defendant would be subjected during the course of supervision. Id. at 878.

Defendant Stephens was sentenced for importing marijuana in violation of 21 U.S.C. §§ 952 and 960 and one count of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). As a condition of his supervised release the court imposed the mandatory three drug tests. The court also required him to "participate in a drug and alcohol abuse treatment and counseling program, including urinalysis testing, as directed by the Probation Officer . . ." Id. at 879. Upon being placed on supervised release, Stephens was placed on a random urinalysis testing program. After several positive urine samples and four failures to report for urine testing, his supervised release was revoked. He then appealed his sentence on the basis that the district court improperly delegated to the probation officer its authority to determine the number, frequency, timing and manner of substance abuse testing. The court vacated the drug testing provision and remanded the case to the district court to determine the maximum number of drug tests to which a defendant must submit. The court held that a defendant shall not be required to take any drug tests beyond the three required by the statute unless the district court has made such a determination. Id. at 884.

In reaching its conclusion, the court first examined Congress's inclusion in § 3583(d) of the drug testing requirement and the parenthetical provision, "as determined by the court." The court reasoned that the language of § 3583(d) clearly dictates that "courts themselves determine not only whether the defendant will be tested during [supervision], but the maximum number of tests as well." Id. at 882. The court held that

"probation officers may not be vested with unlimited discretion to order drug tests given the very real consequences that may follow therefrom. Where, as here, a probation officer can of his own accord order a test, he is subjecting the defendant to the possibility of further criminal punishment. While allowing the probation officer to determine the timing of tests is a permissible administrative task, it is for the court to determine how many times a defendant may be placed in jeopardy of being tested." Id. at 883. In so ruling, the court joined its sister circuits. See United States v. Bonanno, 146 F.3d 502, 511 (7th Cir. 1998) (drug testing order which required defendants to submit to urinalysis "at random . . . within the discretion of the probation officer" was beyond the parameters of the supervised release statute and gave the probation officer too much discretion in the management of the drug testing order); United States v. Meldendez-Santana, 353 F.3d 93, 103 (1st Cir. 2003) (while courts need not become involved in details such as scheduling tests, Congress assigned the court the responsibility of stating the maximum number of tests to be preformed or to set a range; they may not vest probation officers with the discretion to order an unlimited number of drug test); and United States v. Tulloch, 380 F.3d 8, 10-11 (1st Cir. 2004) (giving probation officer discretion to order unlimited drug tests is an improper delegation). See also United States v. Kent, 209 F.3d 1073, 1079 (8th Cir. 2000) (court's order that if counseling "becomes necessary" probation officer may determine whether defendant must participate, was inconsistent with Article III because punishment is a judicial function); United States v. Nash, 438 F.3d 1302, 1306 (11th Cir. 2006) (condition of supervised release requiring defendant to participate in a mental health program "as deemed necessary by the probation officer" was improper delegation of judicial sentencing authority).

Here, Mr. Armstrong's judgment fails to provide for further testing in addition to the mandatory three tests. It does, however, provide for testing in conjunction with treatment. The <u>Stephens</u>' court differentiated between the two conditions of drug testing in conjunction with drug treatment and random urinalysis preformed by the probation officer. In Mr. Armstrong's case, he was not in a drug treatment program when subjected to the testing that lead to the allegations in the petition. He was simply subjected to random drug testing at the discretion of the probation officer. Under <u>Stephens</u>, the probation office had no authority to require him to submit to urinalysis. The petition, with the exception of Allegation One, must be dismissed.

DATED this 7th day of April, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ M. J. Haden
Staff Attorney
Georgia Bar No. 316531
601 West Fifth Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mj_haden@fd.org

<u>Certification</u>:

I certify that on April 7, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Stephen Cooper, Esq.

/s/ M. J. Haden